# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA, )
)
     and )
)
THE STATE OF NEW YORK, )
)     Civil Action No.
     Plaintiffs, )
)
     v. )
)
THE CITY OF OSWEGO, NEW YORK, )
A Municipal Corporation, )
)
     Defendant. )
_____ )

## CONSENT DECREE

## TABLE OF CONTENTS

I.      **JURISDICTION AND VENUE** .............................................................................. 2

II.     **APPLICABILITY** ............................................................................................... 3

III.    **OBJECTIVES** ..................................................................................................... 4

IV.     **DEFINITIONS** ................................................................................................... 4

V.      **CIVIL PENALTY** ............................................................................................... 10

VI.     **COMPLIANCE REQUIREMENTS** ................................................................ 11

VII.    **REPORTING** ..................................................................................................... 31

VIII.   **APPROVAL OF DELIVERABLES** ................................................................ 35

IX.     **STIPULATED PENALTIES** ............................................................................. 37

X.      **FORCE MAJEURE** ............................................................................................ 42

XI.     **DISPUTE RESOLUTION** ................................................................................. 44

XII.    **INFORMATION COLLECTION AND RETENTION** .................................. 46

XIII.   **EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS** ....................... 49

XIV.    **COSTS** ................................................................................................................ 50

XV.     **NOTICES** ........................................................................................................... 50

XVI.    **EFFECTIVE DATE** ........................................................................................... 52

XVII.   **RETENTION OF JURISDICTION** .................................................................. 53

XVIII.  **MODIFICATION** .............................................................................................. 53

XIX.    **PUBLIC PARTICIPATION** ............................................................................. 53

XX.     **SIGNATORIES/SERVICE** ............................................................................... 54

XXI.    **INTEGRATION** ................................................................................................ 54

i

**XXII.  TERMINATION** ...........................................................................................................55

**XXIII.  FINAL JUDGMENT** ..................................................................................................55

**XXIV.  APPENDICES** ............................................................................................................56

Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and Plaintiff State of New York ("State") (collectively, the "Plaintiffs"), filed a complaint in this action ("Complaint") concurrently with this Consent Decree, alleging that Defendant, the City of Oswego, New York ("City"), violated and is violating Section 301(a) of the Clean Water Act ("Act"), 33 U.S.C. § 1311(a), in connection with unpermitted discharges from the west side of the City's publicly owned treatment works.

The City, which has a population of approximately 18,000, owns and operates a "publicly owned treatment works" ("POTW"), as defined at 40 C.F.R. § 403.3, part of which is located on the east side of the Oswego River ("East Side System"), and the remainder of which is located on the west side of the River ("West Side System"). The East Side System serves approximately 8,700 people, including citizens of Oswego's east side and certain surrounding communities. The West Side System services approximately 10,000 people, including citizens of Oswego's west side and certain surrounding communities. On April 14, 2004, the City and the New York State Department of Environmental Conservation entered into an Administrative Consent Order (No. R7-20040316-16) resolving claims that the City violated Section 17-0803 of the New York Environmental Conservation Law, and Section 751.1 of Title 6 of the New York Code of Rules and Regulations at the East Side System ("East Side Order"). The East Side Order was modified on February 27, 2006. Pursuant to the modified East Side Order, the City paid a civil penalty of $10,000 for past violations of the Act in the East Side System and implemented corrective measures in that system, at a cost estimated by the City of approximately $16,100,000. The above-captioned action addresses violations in the West Side System only.

1

The Complaint in this action seeks injunctive relief and civil penalties, pursuant to Sections 309(b) and (d) of the Act, 33 U.S.C. §§1319(b) and (d), for the discharge of pollutants into navigable waters of the United States from the City's West Side System, in violation of Section 301(a) of the Act, 33 U.S.C. §1311(a). The State has been joined as a party to this action pursuant to Section 309(e) of the Act, 33 U.S.C. §1319(e). In addition, the City has violated and is violating several provisions of the New York State Environmental Conservation Law ("ECL"), including sections 17-0701 and 17-0803, due to the unpermitted discharges from the West Side System.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, below, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. **JURISDICTION AND VENUE**

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 309(b) and 505(a) of the Act, 33 U.S.C. §§ 1319(b) and 1365(a), and over the Parties. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over the state law claims asserted by the State. Venue lies in this judicial district pursuant to Sections 309(b) and 505(c) of the Act, 33 U.S.C. §§ 1319(b), 1365(c), and 28 U.S.C. §§ 1391(b), 1395(a), because the City is located in this judicial district and because the causes of action alleged in the Complaint are alleged to have occurred in this judicial district. For

2

purposes of this Decree, or any action to enforce this Decree, the City consents to the Court's

jurisdiction over this Decree or such action, and over the City, and consents to venue in this

judicial district.

2.      For purposes of this Decree, the City agrees that the Complaint states claims upon which

relief may be granted pursuant to Sections 309(b) and (d) of the Act, 33 U.S.C. §§ 1319(b)

and (d), the New York State Environmental Conservation Law, Article 17, and accompanying

regulations set forth at 6 NYCRR Part 750.

## II. APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the Plaintiffs, and

upon the City and any successors, assigns, or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of the West Side System, or any portion thereof,

whether in compliance with the procedures of this Paragraph or otherwise, shall relieve the City

of its obligation to ensure that the terms of the Decree are implemented.  At least 30 days prior to

any such transfer, the City shall provide a copy of this Consent Decree to the proposed transferee

and shall simultaneously provide written notice of the prospective transfer, together with a copy

of the proposed written agreement, to EPA, the United States Department of Justice, and the

State, in accordance with Section XV (Notices).  Any attempt to transfer ownership or operation

of the West Side System, or any portion thereof, without complying with this Paragraph

constitutes a violation of this Decree.

5.      The City shall provide a copy of this Consent Decree to all officers, employees, and

agents whose duties might reasonably include compliance with any provision of this Decree, as

well as to any contractor retained to perform work required under this Consent Decree.  The City

3

shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, the City shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.  OBJECTIVES

7.      All plans, measures, reports, construction, maintenance, operational requirements, and other obligations in this Consent Decree, or resulting from the activities required by this Decree, shall have the objective of ensuring that the City achieves and maintains for the term of this Decree full compliance with the Act, and its objectives, the State water pollution control laws, all applicable federal and state regulations, and the terms and conditions of the City's State Pollutant Discharge Elimination System Permit No. NY-0029106 (the "SPDES Permit") for the West Side System, including, without limitation, elimination of all Sanitary Sewer Overflows ("SSOs") and elimination or control of all Combined Sewer Overflows ("CSOs") in accordance with EPA's CSO Policy.

### IV.  DEFINITIONS

8.      Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.    "City" shall mean the City of Oswego, New York, the Defendant in the above-captioned action.  Unless otherwise specified, reference to locations in this Decree are to locations within the City on the west side of the Oswego River.

b.    "Combined Sewer Overflow" or "CSO" shall mean an overflow, spill, or release of wastewater from the Combined Sewer System ("CSS") within the City's West Side System. This term shall include:

   i.    discharges to waters of the State or United States from the CSS; and

   ii.    any release of wastewater from the CSS to public or private property (including backups into public or private buildings or other private property) that does not reach waters of the United States or the State.

c.    "Combined Sewer System" or "CSS" shall mean that portion of the City's wastewater collection and transmission system ("WCTS") which is designed to collect and transmit municipal sewage (including domestic, commercial and industrial wastewaters), combined with stormwater.  The City's CSS is separate and distinct from its Sanitary Sewer System, or SSS, defined below.

d.    "Complaint" shall mean the complaint filed jointly by the United States and the State in the above-captioned action.

e.    "Consent Decree" or "Decree" shall mean this Consent Decree and all appendices hereto (listed in Section XXIV), including any amendments thereto.

f.    "Day" shall mean a calendar day unless expressly stated to be a working day.  In computing any period of time under this Decree, where the last day would fall on a Saturday,

Sunday, or federal holiday, the period shall run until the close of business on the next working day.

g.      "DEC" shall mean the New York State Department of Environmental Conservation and any of its successor departments or agencies.

h.      "Effective Date" shall have the definition provided in Section XVI.

i.      "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

j.      "EFMF" shall mean the West Side System's Excess Flow Management Facility and its components, including the "Swirl Concentrator," located near the intersection of West First Street and West Schuyler Street.

k.      "Excessive I/I" shall mean "excessive infiltration / inflow" as that term is used in 40 C.F.R. § 35.2120.

l.      "Force Main" shall mean a pipe that receives wastewater from the discharge side of a pump and conveys the wastewater under pressure.

m.      "Gravity Sewer Line" shall mean a pipe that receives and contains wastewater and conveys the wastewater normally not under pressure or with any assistance other than the influence of gravity.

n.      "Infiltration" shall mean water other than wastewater that enters a sewer system (including sewer service connections and foundation drains) from the ground through such means as defective pipes, pipe joints, connections, or manholes, as provided in 40 C.F.R. § 35.2005(b)(20).

6

o.      "Inflow" shall mean water other than wastewater that enters a sewer system
(including sewer service connections) from sources such as, but not limited to, roof leaders,
cellar drains, yard drains, area drains, drains from springs and swampy areas, manhole covers,
cross-connections between storm sewers and sanitary sewers, catch basins, cooling towers, storm
water, surface runoff, street wash waters, or drainage, as provided in 40 C.F.R. § 35.2005(b)(21).

p.      "Interest" shall mean interest at the rate specified in 28 U.S.C. § 1961.  Unless
otherwise stated, the applicable rate of interest shall be the rate in effect at the time the interest
accrues.

q.      "I/I" shall mean the total quantity of water from Infiltration and Inflow without
distinguishing the source.

r.      "LTCP" shall mean a Long-Term Control Plan within the meaning of EPA's
"Combined Sewer Overflow Control Policy," 59 Fed. Reg. 18688, April 19, 1994 ("CSO
Policy").

s.      "Oswego River" shall mean the river flowing from the confluence of the Oneida
River and the Seneca River, through the City of Oswego, into Lake Ontario.

t.      "Oswego River Interceptor" or "ORI" shall mean a series of pipes, extending
5,600 feet along the western bank of the Oswego River, from West First Street at Ellen Street to
the EFMF.  The interceptor was constructed in the early 1980s to intercept sewage and
stormwater flowing over and through the CSS before they discharge to the Oswego River.  Flows
through the interceptor travel northerly, through 18-inch pipes at the southern, Ellen Street end of
the interceptor, through two 36-inch pipes for approximately 1,700 feet beneath the City's west

7

side river walk park, through one 54-inch pipe, and into the EFMF.  The interceptor captures and transports all regular (non-overflowing) CSS flows to the EFMF.

u.      "Outfall No. 002" shall mean the outfall from the EFMF, as described more particularly in the City's SPDES Permit.

v.      "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral, unless specified otherwise.

w.      "Parties" shall mean the United States, the State, and the City.

x.      "Plaintiffs" shall mean the United States and the State.

y.      "Prohibited CSO" shall mean a CSO that has not been authorized pursuant to the City's SPDES Permit.

z.      "Pump Station" shall mean facilities comprised of pumps which lift wastewater to a higher hydraulic elevation, including all related electrical, mechanical, and structural systems necessary to the operation of that pump station.

aa.     "Sanitary Sewer Overflow" or "SSO" shall mean an overflow, spill, or release of wastewater from or caused by the Sanitary Sewer System ("SSS") within the City's West Side System.  This term shall include:

i.       discharges to waters of the State or United States from the SSS; and

ii.      any release of wastewater from the SSS to public or private property (including backups into public or private buildings or other private property) that does not reach waters of the United States or the State.

bb.     "Sanitary Sewer System" or "SSS" shall mean all portions of the City's WCTS that are not part of its Combined Sewer System, or CSS, defined above.

8

cc.     "Section" shall mean a portion of this Decree identified by a roman numeral, unless specified otherwise.

dd.     "SPDES Permit" shall mean State Pollutant Discharge Elimination System permit number NY-0029106 issued to the City pursuant to Title 8 of Article 17 of the Environmental Conservation Law of New York State and Section 402 of the Act, 33 U.S.C. § 1342, for the WWTP and any future extended, modified, or reissued permit therefor.

ee.     "State" shall mean the State of New York.

ff.     "WCTS" shall mean the City's west side combined and sanitary wastewater collection and transmission system (*i.e.*, CSS and SSS), including all pipes, interceptors, Force Mains, Gravity Sewer Lines, lift stations, Pump Stations, manholes and appurtenances thereto, owned or operated by the City, and which are located, or connected to system components located, west of the center of the Oswego River.

gg.     "West Side System" shall mean the "publicly owned treatment works," as defined at 40 C.F.R. § 403.3, located west of the center of the Oswego River, owned or operated by the City.  The West Side System is separate and distinct from the City's "East Side System," located east of the center of the Oswego River.  The West Side System is comprised of the WWTP and the WCTS.  Unless otherwise stated, references in this Decree to components of a municipal wastewater treatment system and to a collection and transmission system should be assumed to be references to components of the City's West Side System.

hh.     "WWTP" shall mean the City's West Side wastewater treatment plant, including all of its components, located at First Avenue and West Schuyler Street, Oswego, New York 13126.

9

ii.      "Work" shall mean all activities the City is required to perform under this Decree,

except those required by Paragraphs 69 and 70 (regarding retention of records).

## V. CIVIL PENALTY

9.      Within 30 days after the Effective Date of this Decree, the City shall pay a total of

$99,000 as a civil penalty.   The City shall make payment of the civil penalty as follows:

a.      Payment of $49,500 of the civil penalty shall be in satisfaction of the United

States' claims for civil penalties alleged in the Complaint.  The United States' payment shall be

made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in

accordance with instructions to be provided to the City, following lodging of the Decree, by the

Financial Litigation Unit of the U.S. Attorney's Office for the Northern District of New York.

At the time of payment, the City shall simultaneously send written notice of payment and a copy

of any transmittal documentation (which should reference DOJ case number 90-5-1-1-08609 and

the civil action number of this case) to the United States in accordance with Section XV of this

Decree (Notices).

b.      Payment of $49,500 of the civil penalty shall be in satisfaction of the State's

claims for civil penalties alleged in the Complaint.  The State's payment shall be made by

certified or bank check made payable to the "Department of Environmental Conservation,"

which shall be forwarded to the Department of Environmental Conservation, the Office of

General Counsel, 625 Broadway, 14th Floor, Albany, NY 12233-5500, attention:  Elissa

Armater.  Copies of the payment check and any transmittal documentation shall be sent to the

State in accordance with Section XV (Notices).

## VI. COMPLIANCE REQUIREMENTS

10.    The City shall implement the projects identified in this Section VI, and in Appendix A of this Decree.  The City shall implement all such measures in a timely manner, in accordance with all schedules required hereunder or otherwise approved by EPA and DEC, including without limitation the schedule set forth in Appendix A.

11.    **Oswego River Interceptor Cleaning.**  Commencing on July 1, 2010, and at least once per year thereafter, the City shall inspect the ORI.  Each inspection shall include, at a minimum, four measurements of the depth of accumulated debris and other solids within the ORI:  two in different, representative locations within the dual 36-inch diameter portion, and two in different, representative locations within the single 54-inch diameter portion of the ORI.  If any of those measurements reveal that debris and other solids have accumulated to a depth of four or more inches in the 36-inch section or six or more inches in the 54-inch section, then the City shall clean the entire ORI, including without limitation the removal of all accumulated debris and solids.

12.    **Disinfection**

a.    By May 1, 2010, the City shall submit to DEC for review and approval, in accordance with Section VIII (Approval of Deliverables), an engineering report ("Disinfection Report") for the disinfection of any wastewaters (including sanitary sewage and/or storm water) discharged from Outfall No. 002, from June 1 through September 31 of each year ("Seasonal Disinfection"), from 2011 through 2021.

11

b.      The Disinfection Report shall:

        i.      consider alternatives for achieving Seasonal Disinfection in a manner that meets the effluent limits for Outfall No. 002, set forth in the SPDES Permit;

        ii.     select one such alternative for implementation;

        iii.    explain the reasons for the selection; and

        iv.     propose a deadline for submission of the engineering plans and specifications necessary for implementing the selected alternative.

c.      Upon approval by DEC, the Disinfection Report shall be incorporated by reference as if set forth fully in this Decree.  The City shall implement the Disinfection Report approved by DEC, in accordance with the schedule therein.

d.      If the City wishes to terminate Seasonal Disinfection, it shall comply with the following procedures:

        i.      The City shall fully implement the approved Disinfection Report, pursuant to subparagraph (c) above.

        ii.     Health Report.  Within 60 days after meeting the requirements of Paragraph 25(d)(vi) (CSO Control Measures), but in no event later than November 1, 2021, the City shall submit to DEC for approval, pursuant to Section VIII (Approval of Deliverables), a report demonstrating that all applicable WQS have been met and that there is no public health need or aquatic health need for disinfection ("Health Report"), and shall send a copy of the Health Report to EPA pursuant to Section XV (Notices).

        iii.    SPDES Permit Modification.  If DEC approves the Health Report pursuant to subparagraph (d)(ii) above, City shall submit to DEC an application for a modification of the

12

SPDES Permit that eliminates all disinfection requirements in the SPDES Permit.  The City understands that, in order for the State to issue a modified SPDES Permit, the State must provide the public with notice and an opportunity for comment or hearing regarding the requested SPDES Permit modification and consider any public comments timely submitted during the public comment period, in accordance with applicable State law.

        iv.    If DEC approves the City's application for a SPDES Permit modification pursuant to subparagraph (d)(iii) above, the City shall submit to DEC for review and approval, in accordance with Section VIII (Approval of Deliverables), a request for termination of Seasonal Disinfection ("Disinfection Termination Request"), certifying that the procedures set forth in subparagraphs (d)(i)-(iii) above have been followed and enclosing all supporting documentation.

        e.    The City shall continue Seasonal Disinfection unless and until DEC issues a written approval of the City's Disinfection Termination Request in accordance with Section VIII (Approval of Deliverables).  If and when DEC issues such written approval, all disinfection requirements in this Consent Decree shall terminate.

13.    **Catch Basin Inflow Elimination**.  As soon as practicable, but no later than November 1, 2010, the City shall eliminate all inflow of stormwater or other flows to the SSS from the catch basins at the following locations:  Fifth Avenue Storm Sewer Extension; West Erie Street Extension at Singleton Street; West Sixth Storm Sewer Extension from Erie to Albany Street; West Seventh Catch Basin Redirect at Niagara Street; and Hart Street Extension to Tallman Street, as depicted on the map attached hereto as Appendix B.

14.     **Flow Monitoring**

     a.     From the date of signature of this Decree through November 1, 2010, the City shall, at a minimum, monitor the following flows within the West Side System using flow monitoring devices located at:

     i.     the manholes located on the walkway by the Oswego River near the intersection of Water Street and Market Street ("Riverwalk Manholes"); and

     ii.     the manholes, vaults and other components of the WCTS located near the intersection of West Schuyler Street and First Avenue, immediately prior to the headworks of the WWTP ("WWTP Manholes").

     b.     By December 31, 2010, the City shall install, and continuously thereafter the City shall operate, flow monitoring devices that monitor, at a minimum, total flow volume, rate, and duration for each and every SSO and CSO from the West Side System, including without limitation overflows from:

     i.     the Riverwalk Manholes; and

     ii.     the manholes, vaults and other components of the WCTS located near the intersection of West Schuyler Street and First Avenue, immediately prior to the headworks of the WWTP ("WWTP Manholes").

All results of the flow monitoring required pursuant to this Paragraph shall be included in the Quarterly Reports required pursuant to Section VII.

14

15.   **Public Notification**

   a.      The public shall be adequately informed of the City's discharges from the WCTS, the impact of those discharges on receiving waters and all actions to control or eliminate such discharges, including without limitation the posting of warning signs, as specified below.

   b.   **Warning Signs**

       i.      By March 31, 2010, the City shall post, and continuously thereafter the City shall maintain, signs within 10 feet of each and every SSO and CSO discharge point within the West Side System, including without limitation:

           (1)      the Riverwalk Manholes;

           (2)      the Gardenier Creek discharge point into Lake Ontario; and

           (3)      the EFMF.

       ii.   Each such sign:

           (1)      shall be in substantially the same form as one of the signs attached hereto as Appendices C and D; provided, however, that the sign at Appendix C shall be used for the Riverwalk Manholes and the EFMF, and the sign at Appendix D shall be used for the Gardenier Creek discharge point into Lake Ontario;

           (2)      shall measure at least 18 inches tall and 24 inches wide;

           (3)      shall be made of a durable, weatherproof material;

           (4)      shall be readily visible to the unaided eye from a distance of 100 feet; and

           (5)      shall, if located within 100 feet of a water body, be visible both from the water and from the land.

iii.     By January 31, 2010, the City shall submit to EPA and DEC for review and approval, in accordance with Section VIII (Approval of Deliverables), a prototype of the signs to be posted pursuant to this Paragraph.

iv.     Notwithstanding subparagraph (i), the City may remove any such sign when the following conditions are met:

(1)     there has been no discharge from the SSO/CSO discharge point associated with the sign for a continuous period of 365 days; and

(2)     the City has submitted to EPA and DEC a written certification that there has been no such discharge.

v.     In the event that, after a sign has been removed pursuant to subparagraph (iv) above, there is a discharge from the subject SSO/CSO discharge point, the City shall, within 15 days following the discharge, re-post the sign and maintain the sign as required above.

vi.     In the first Quarterly Report submitted pursuant to Section VII after the completion date for the posting of the signs required by this Paragraph, an authorized representative of the City shall certify that all signs required by this Paragraph 15(b) have been posted and remain in place.  With that report, the City shall submit to EPA and DEC photographs clearly depicting each posted sign and its location relative to the corresponding discharge point. With each photograph, the City shall submit to EPA and DEC a description of the sign's location by street address, intersection, or Global Positioning System ("GPS") coordinates.

16.     **Funding**

a.     Although the City intends to seek federal and state funding assistance, compliance with the requirements of this Decree is not contingent upon or conditioned on the receipt of any

16

federal or state funds. In addition, the lack of federal or state funds, or the time required for processing any applications for such funds for use in financing compliance with the requirements of this Decree, shall not excuse any failure to timely comply with this Decree.

b.      By March 1, 2010, and continuously thereafter until the date of termination of this Decree pursuant to Section XXII, the City shall retain a qualified expert in municipal finance to assist the City in identifying and securing sufficient funding for compliance with this Decree, including without limitation the submission of timely and complete applications for federal or state grants, loans, or other available types of funding. Within 10 days after retaining such an expert, the City shall notify the Plaintiffs of the identity (including name, address, title, company, and phone number) of the expert.

c.      No later than March 1, 2012, the City shall establish an "Enterprise Fund" for sewer use fees. The City shall deposit into this Enterprise Fund all sewer use fees collected by the City. This Enterprise Fund shall be dedicated initially to the funding of work required under this Decree and, if any funds remain in the Fund after completion of such work, to other projects related to sewer service by the City. At least once every year thereafter, the sewer use fees shall be adjusted so that the amount in the Enterprise Fund shall equal or exceed expected sewer construction, operation and maintenance expenses over the following year.

17.    **Sanitary Sewer Evaluation Survey**

a.      The City shall complete a Sanitary Sewer Evaluation Survey ("SSES") for the one-third of the City's SSS with the highest contribution of I/I ("High-I/I Section"), pursuant to the approved SSES Report required by subsection (b) below. The City shall perform the SSES in accordance with sound engineering practice and all applicable EPA policy and guidance

17

documents, including without limitation:  the *Handbook: Sewer System Infrastructure Analysis and Rehabilitation*, EPA/625/6-91/030, 1991; *Existing Sewer Evaluation and Rehabilitation,* WEF MOP FD-6, 1994; *A Guide to Short Term Flow Surveys of Sewer Systems*, WRC Engineering (Undated); and the National Association of Sewer Service Companies ("NASSCO") "Manual of Practice"; and any amendments thereto.

b.    By March 1, 2010, the City shall submit to EPA and DEC for review and approval, in accordance with Section VIII (Approval of Deliverables), an engineering report ("SSES Report") setting forth the results of the SSES, analyzing alternatives and selecting corrective actions, and proposing a schedule of implementation deadlines for key milestones, including submission of engineering plans and specifications, and construction start and completion dates for all selected corrective actions.  The deadline for final completion shall be no later than November 1, 2014.  Upon its approval by EPA and DEC, the City shall implement the SSES Report approved by EPA and DEC in accordance with the schedule therein.  The approved SSES Report shall be incorporated by reference as if set forth fully in this Decree.

18.    **Privately Owned Portion of Lateral.**  If at any time, the City discovers, through investigation, notification, or otherwise, that a privately owned portion of a customer service connection lateral is a source of Excessive I/I that causes or contributes, or is likely to cause or contribute, to an SSO, the City, within 90 days of that discovery, shall notify the owner(s) of the lateral that the lateral is a source of Excessive I/I and shall take action, consistent with the City's legal authority, to repair, rehabilitate, or replace the lateral so it is no longer a source of Excessive I/I.  In its Quarterly Reports, submitted pursuant to Section VII, the City shall identify the dates of any such notices to owners of privately owned portions of customer service

18

connection laterals sent during the reporting period, the locations of the subject laterals, and for each such lateral any corrective action taken under this Paragraph.

19.   **Extensions**

      a.    A "New Extension" shall mean a connection added to the WCTS designed to collect or transmit 2,500 gpd or more of sanitary sewage, alone or in combination with storm water, as provided in 6 NYCRR §§ 750-1.2(a)(79)-(80).

      b.    Commencing on April 1, 2010, the City shall not make or allow any New Extension, unless:  (1) DEC approves the New Extension in accordance with Section VIII (Approval of Deliverables); and (2) any additional flow resulting from the New Extension is offset by the removal of I/I in an amount five times greater than such additional flow, as demonstrated in a written report submitted by the City and approved by DEC, in accordance with Section VIII (Approval of Deliverables).

      i.    For any New Extension for which construction is completed between April 1, 2010 and November 1, 2010, the resulting additional flow may be offset by I/I reduction achieved at any time during that period.

      ii.    For any New Extension for which construction is completed after November 1, 2010, the resulting additional flow must be offset by I/I reduction achieved prior to the commencement of the construction.

      c.    The written report required pursuant to subparagraph (b) above shall include, at a minimum:

    i.  a visual depiction (*e.g.*, diagram or map) and narrative description of each New Extension for which construction was completed during the Quarterly Report's reporting period, including the extension's location, length, and diameter(s);

    ii.  the average flow, in gallons per day, added to the WCTS as a result of the New Extension;

    iii.  a visual depiction (*e.g.*, diagram or map) and narrative description of each I/I source removed from the WCTS (if any) during the reporting period, including date, location, and associated volume of I/I, in average gallons per day;

    iv.  the average number of gallons per day of I/I removed (if any) from the WCTS during the reporting period; and

    v.  the total amount of I/I (if any) reduced since April 1, 2010 as of: (1) the beginning of the reporting period, and (2) the end of the reporting period.

  d.  To account for the additional flow from New Extensions, and the offsetting reduction of I/I, pursuant to this Paragraph, the City shall include a separate section, entitled "New Extensions," in each Quarterly Report, setting forth or attaching the following, at a minimum:

    i.  the average flow, in gallons per day, added to the WCTS as a result of the New Extension;

    ii.  the average number of gallons per day of I/I removed (if any) from the WCTS during the reporting period; and

    iii.  the total amount of I/I (if any) reduced since April 1, 2010 as of: (1) the beginning of the reporting period, and (2) the end of the reporting period.

20.   **Operations and Maintenance**

a.   **Capacity, Management, Operations and Maintenance.**  No later than

November 1, 2010, the City shall submit to EPA and DEC for review and approval, in

accordance with Section VIII (Approval of Deliverables), a proposed capacity, management,

operations and maintenance program ("CMOM Program"), including a proposed schedule of

deadlines for the implementation of key milestones.  The CMOM Program shall describe and

evaluate the capacity, management and operation and maintenance of the City's West Side

System, including quantitative measures for assessing CMOM Program implementation, in

accordance with EPA's "Guide for Evaluating Capacity, Management, Operation, and

Maintenance ('CMOM') Programs at Sanitary Sewer Collection Systems," EPA 305-B-05-002

(January 2005).  Upon approval by EPA and DEC, the CMOM Program shall be implemented in

accordance with the schedule approved by EPA and DEC, and both shall be incorporated by

reference as if set forth fully in this Decree.  The City's CMOM Program shall include, without

limitation, the following:

i.   By November 1, 2014, the City shall submit to EPA and DEC for review

and approval, in accordance with Section VIII (Approval of Deliverables), a plan ("Remaining

WCTS Plan, Pt. 1") identifying needed corrective actions, and a schedule of deadlines for

completion of such corrective actions no later than November 1, 2017, for half of the following:

the remainder of the SSS, not included in the High-I/I Section of the SSS addressed in the SSES

required under Paragraph 17 above, plus the entire CSS (collectively, the "Remaining WCTS").

Upon approval by EPA and DEC, the Remaining WCTS Plan, Pt. 1 shall be incorporated by

21

reference as if set forth fully in this Decree.  The City shall implement the approved Remaining

WCTS Plan, Pt. 1 in accordance with the implementation date schedule therein.

      ii.     By November 1, 2018, the City shall submit to EPA and DEC for review

and approval, in accordance with Section VIII (Approval of Deliverables), a plan ("Remaining

WCTS Plan, Pt. 2") identifying needed corrective actions, and an implementation schedule to

complete such corrective actions by November 1, 2021, for the remainder of the Remaining

WCTS.  Upon approval by EPA and DEC, the Remaining WCTS Plan, Pt. 2 shall be

incorporated by reference as if set forth fully in this Decree.  The City shall implement the

approved Remaining WCTS Plan, Pt. 2 in accordance with the schedule therein.

      iii.     By November 1, 2010, the City shall make best efforts to enter into a

binding contract or agreement, or other legally enforceable arrangement, in writing, with the

State University of New York at Oswego ("SUNY") designed to minimize sources of Excessive

I/I to the City's WCTS, from any facility, pipe, structure, or other property owned or operated by

SUNY.  Within 10 days after the finalization of any such contract, agreement, or other legally

enforceable arrangement, the City shall submit copies thereof to the Plaintiffs at in accordance

with Section XV (Notices).

    b.    **WWTP Operation and Maintenance.**  By November 1, 2013, the City shall

submit to EPA and DEC for review and approval, in accordance with Section VIII (Approval of

Deliverables), a comprehensive Operation and Preventative Maintenance Program for the

WWTP ("WWTP O&M Program"), in accordance with the EPA publications *Improving POTW*

*Performance Using the Composite Correction Approach,* EPA CERI, October 1984, and

*Retrofitting POTWs,* EPA CERI, July 1989 (collectively, "EPA POTW Guidance").  Upon

approval by EPA and DEC, the WWTP O&M Program shall be incorporated by reference as if set forth fully in this Decree.  The WWTP O&M Program shall include, without limitation, the following elements:

      i.      Categorization of treatment plant components as critical, semi-critical or non-critical.  The City shall inventory its WWTP's operating equipment and evaluate the impacts of the loss of use or failure of each major system component.  Based on this categorization, the City shall prioritize its efforts to avoid failures in WWTP components, using its maintenance capabilities and spare parts inventories, in a manner designed to maximize the West Side System's treatment capacity and SPDES compliance.

      ii.      A schedule of implementation dates for performance of preventative maintenance activities that is as expeditious as possible.  The City shall develop an implementation date schedule for routine activities such as pump maintenance, lubrication, painting, and other maintenance activities as needed in the City's treatment system that is as expeditious as possible.  The City shall develop schedules for these activities which are reflective of the characteristics and needs of the various portions of its treatment system, and which are consistent with the manufacturers' recommendations.  Upon approval by EPA and DEC, the WWTP O&M Program shall be incorporated by reference as if set forth fully in this Decree, and shall be implemented in accordance with the dates contained in the schedule approved by EPA and DEC.

      iii.      By March 1, 2010, the City shall submit to EPA and DEC its current Wet Weather Operating Plan, its current WWTP O&M plan, and its identification of Sensitive Areas, developed pursuant to the SPDES Permit.

21.     **Pump Station Evaluation**

a.      By January 1, 2012, the City shall submit to EPA and DEC an evaluation of the Pump Station at the EFMF.  This Pump Station evaluation ("PSE") shall include, without limitation, an evaluation of the design capacity, current effective capacity, equipment condition, and operational redundancy of the EFMF Pump Station.

b.      By January 1, 2013, based on the PSE, the City shall submit an engineering report, for review and approval by EPA and DEC, in accordance with Section VIII (Approval of Deliverables), for upgrading the Pump Station ("Pump Station Report").  The goal of the PSE shall be to ensure that the Pump Station functions in accordance with generally accepted industry standards, considering current and expected future uses.  The Pump Station Report shall include the results of the PSE, an analysis of alternatives, a recommendation for action, and a schedule with deadlines for submission to EPA and DEC of engineering plans and specifications, and construction start and completion dates.  Upon approval by EPA and DEC, the Pump Station Report shall be incorporated by reference as if set forth fully in this Decree.  The City shall implement the approved Pump Station Report, in accordance with the schedule therein.

c.      By November 1, 2014, the City shall complete the action selected in the approved Pump Station Report.

d.      The Pump Station Evaluation, required pursuant to this Paragraph, above, shall consider the following criteria:

i.      adequacy of station capacity, considering current and expected future uses, in accordance with the requirements of this Consent Decree, as described in the "Pump Systems"

24

chapter of the most current version of WEF's Manual of Practice FD-4, "Design of Wastewater and Stormwater Pump Stations";

ii.     critical response time, defined as the time interval between activation of the high wet well level alarm and the first CSO, under peak flow conditions;

iii.    adequacy of station condition, based upon both physical inspection and recent operating and mechanical failure history during at least the past five years;

iv.    adequacy of station design and equipment, including redundancy of pumps and electrical power supply, and other equipment installed, based upon Chapter 40, "Wastewater Pump Stations" of the most recent edition of "Recommended Standards for Wastewater Facilities" by the Great Lakes-Upper Mississippi River Board of State and Provincial Public Health and Environmental Managers (commonly known as the "Ten State Standards"); and

v.     the ability of maintenance personnel to take corrective action within the critical response time calculated for the Pump Station.

vi.    the adequacy of its current Pump Station backup power and emergency pumping capabilities, which may be achieved via emergency generators, emergency pumping capabilities, or separate power feeds from separate substations.

22.    **Wastewater Treatment Plant Expansion**

a.     By May 1, 2010, the City shall submit to EPA and DEC for review and approval, in accordance with Section VIII (Approval of Deliverables), an engineering report for expanding the capacity of the WWTP to at least twelve mgd ("WWTP Expansion Report").  In its WWTP Expansion Report, the City shall consider feasible alternatives for segregating and separately treating backwash from its drinking water treatment plant located at 114 Mitchell Street

25

("DWTP") and recommend one of those alternatives for implementation. The WWTP

Expansion Report shall include a schedule containing implementation dates for key milestones,

including submission to EPA and DEC of engineering plans and specifications, and start and

completion of construction of the WWTP expansion and of its recommended alternative for

treating DWTP backwash. Upon approval by EPA and DEC, the WWTP Expansion Report shall

be incorporated by reference as if set forth fully in this Decree. The approved WWTP Expansion

Report shall be implemented in accordance with the schedule therein.

      b.     The City shall submit engineering plans and specifications for the WWTP

expansion no later than July 1, 2011 and shall complete construction of the expansion no later

than November 1, 2013.

23.    **Optimizing the EFMF**

      a.     By January 1, 2013, the City shall submit to EPA and DEC for review and

approval, in accordance with Section VIII (Approval of Deliverables), an engineering report

including a plan and schedule to optimize the performance of the EFMF ("EFMF Optimization

Report"). The EFMF Optimization Report shall require the City to fully optimize the EFMF by

November 1, 2014.

      b.     Upon approval by EPA and DEC, the EFMF Optimization Report shall be

incorporated by reference as if set forth fully in this Decree. The EFMF Optimization Report

shall be implemented in accordance with the schedule approved by EPA and DEC.

24.    **Performance Criteria.** The City shall meet the following Performance Criteria, in

accordance with this Consent Decree:

      a.     eliminate all WWTP SSOs;

b.      eliminate all discharges at or near the Riverwalk Manholes;

c.      allow no more than an average of four CSOs per year at the EFMF;

d.      implement the fifteen "Best Management Practices" set forth in the City's SPDES Permit;

e.      meet New York State WQS in the receiving water of discharges from Outfall No. 002; and

f.      comply with all other requirements of the City's SPDES Permit.

25.   **CSO Control Measures**

a.      The City shall implement control measures for ensuring that the City's CSOs comply with the requirements of the City's SPDES Permit, the Act, and EPA's CSO Policy ("CSO Control Measures").

b.      The City shall submit an engineering report for the CSO Control Measures ("CSO Control Report"), as provided in this Paragraph. The CSO Control Report shall include a series of engineering plans and schedules for the separation in three phases of 75% of the City's CSS, as provided in subparagraph (d) below. The CSO Control Report, and all submissions thereunder, as approved by EPA and DEC, are incorporated by reference as if set forth fully in this Decree.

c.      The CSO Control Report, and submissions thereunder, shall be designed to meet the Performance Criteria set forth in Paragraph 24.

d.      The CSO Control Report shall include the following submissions:

i.      By January 1, 2012, the City shall submit to EPA and DEC for review and approval, in accordance with Section VIII (Approval of Deliverables), an engineering plan and

27

schedule for separating the first 25% of the CSS into independent sanitary and stormwater components ("First 25% Plan"). The City shall select as the First 25% the section of the CSS that, when separated, will contribute most to the elimination of discharges at or near the Riverwalk Manholes.

      ii.     By November 1, 2014, the City shall complete its implementation of the First 25% Plan, as approved by EPA and DEC.

      iii.    By January 1, 2016, the City shall submit to EPA and DEC for review and approval, in accordance with Section VIII (Approval of Deliverables), an engineering plan and schedule for separating the second 25% of the CSS ("Second 25% Plan"). The City shall select as the Second 25% the section of the CSS that, when separated, will contribute most to the elimination of discharges (if any) at or near the Riverwalk Manholes.

      iv.    By November 1, 2018, the City shall complete its implementation of the Second 25% Plan, as approved by EPA and DEC, for a total of 50% separation of the CSS.

      v.    By January 1, 2019, the City shall submit to EPA and DEC for review and approval, in accordance with Section VIII (Approval of Deliverables), an engineering plan and schedule for separating the third 25% of the CSS ("Third 25% Plan"). The City shall select as the Third 25% the section of the CSS that, when separated, will contribute most to the elimination of discharges (if any) at or near the Riverwalk Manholes.

      vi.    By November 1, 2021, the City shall complete its implementation of the Third 25% Plan, as approved by EPA and DEC, for a total of 75% separation of the CSS.

26.    **Post-Construction Monitoring**

a.    By February 1, 2011, the City shall submit to EPA and DEC for review and approval, in accordance with Section VIII (Approval of Deliverables), an existing water quality baseline technical memorandum ("Water Quality Baseline Memo") that includes a detailed description of the receiving water for flows from Outfall No. 002, all applicable water quality standards ("WQS"), and the monitoring data available to determine whether or not such receiving water is in compliance with applicable WQS. The description shall include whether the receiving water is in compliance with each applicable WQS. Upon approval by EPA and DEC, the Water Quality Baseline Memo shall be incorporated by reference as if set forth fully in this Decree.

b.    By November 1, 2012, the City shall submit to EPA and DEC for review and approval, in accordance with Section VIII (Approval of Deliverables), a post-construction monitoring program ("Post-Construction Monitoring Program"), consistent with EPA's LTCP policies and guidance documents, including a Post-Construction Monitoring Plan ("Post-Construction Monitoring Plan") and schedule for one full year of post-construction monitoring, to begin within 60 days after meeting the requirements of Paragraph 25(d)(vi), but in no event later than November 1, 2021, designed to assess whether the City has met the Performance Criteria. Upon approval by EPA and DEC, the Post-Construction Monitoring Program and Post-Construction Monitoring Plan shall be incorporated by reference as if set forth fully in this Decree. The City shall implement the approved Post-Construction Monitoring Program and Post-Construction Monitoring Plan in accordance with the schedule therein.

c.      By January 1, 2023, the City shall submit to EPA and DEC for review and approval, in accordance with Section VIII (Approval of Deliverables), a Post-Construction Monitoring Report ("Post-Construction Monitoring Report").  The Post-Construction Monitoring Report shall include, at a minimum: (i) all data collected during implementation of the Post-Construction Monitoring Program and Post-Construction Monitoring Plan; (ii) an evaluation of whether and to what extent the City has met Performance Criteria; (iii) if the City has not met Performance Criteria, a schedule for submission of engineering plans and specifications, and for start and completion of construction, of separation of the final portion of the CSS into independent stormwater and sanitary components, for a total of 100% separation of the CSS. Nothing in Paragraphs 25 (CSO Control Measures) or 26 (Post-Construction Monitoring) shall prohibit the City from, prior to November 1, 2021, installing additional control measures to achieve Performance Criteria, subject to Paragraph 76 (regarding compliance with applicable law).

d.      Upon approval by EPA and DEC, the Water Quality Baseline Memo, Post-Construction Monitoring Program, and the Post-Construction Monitoring Report shall be incorporated by reference as if set forth fully in this Decree.

e.      The City shall implement the approved Post-Construction Monitoring Report, in accordance with the schedule therein.

## VII. REPORTING

27. **SSO and CSO Reporting**

    a.    The City shall provide to EPA and DEC both an oral notification and a written notification (by facsimile or electronic mail) of any SSO or CSO from any component of the West Side System to any waters of the United States or waters of the State, in accordance with the deadlines and other requirements of 6 NYCRR Part 750.

    b.    The City shall also provide a written report to EPA and DEC of the SSO or CSO, in accordance with the deadlines and other requirements of 6 NYCRR Part 750. The written report shall contain the location of each SSO or CSO, a description of the problem, an estimate of the volume (in gallons) discharged, the cause or suspected cause of the SSO or CSO, and the estimated date, time and duration when each SSO or CSO occurred. In addition, the City shall include information on the steps taken to reduce, eliminate, prevent recurrence of, and/or otherwise respond to the SSO or CSO; and, a report of all notifications of the SSO or CSO to the public and/or other agencies or departments.

28. **Quarterly Reporting.** Beginning on April 30, 2010, and at the end of each calendar quarter thereafter until termination of the Decree, the City shall submit in writing to EPA and DEC a quarterly status report ("Quarterly Report") on the twenty-eighth day of each month following the end of the quarter. (In other words, the first Quarterly Report is due on May 28, 2010, the second Quarterly Report is due on July 28, 2010, the third Quarterly Report is due on October 28, 2010, and subsequent Quarterly Reports are due on January 28, April 28, July 28, and October 28 of each year thereafter until termination.) Each Quarterly Report shall contain a

summary of the status and progress, and estimated completion dates, of all projects and programs required by this Decree, including without limitation:

a.        Identification and elimination of Excessive I/I sources, pursuant to Paragraphs 17 (SSES), 18 (Privately Owned Portion of Lateral), 19 (Extensions), 20(a) (CMOM), and 20(b) (WWTP O&M).  The City shall include in each Quarterly Report a list of all confirmed Excessive I/I sources, the date of confirmation (or best estimate if the actual date is unavailable), normalized estimates of the I/I flow associated with each identified source, whether the Excessive I/I source is on private or public property, actions taken (if any) to eliminate the Excessive I/I source, the dates of those actions, and the elimination date (if eliminated) or the expected elimination date (if not yet eliminated).

b.        Development and implementation of all plans required by Section VI (Compliance Requirements) and the appendices to this Decree, including a statement as to whether specific scheduled milestone dates in the schedules included in each approved plan were met during the month.  Upon completion of each project required by an approved plan, the City shall submit a certification as provided in Paragraph 29 that the specified work has been completed, including the following documentation of the completed work to EPA and DEC .

i.        for work performed by a private contractor, an inspection report by City utilities personnel of the completed project and certification by the City Engineer that the specified work has been completed; and

ii.        for work performed by City personnel, a copy of the work order for the project verified by the City Engineer as having been completed.

32

c.      The status of all SSOs, CSOs, and cross-connections between storm sewers and sanitary sewers in the City's WCTS, including information regarding SSOs, CSOs, or cross-connections discovered or eliminated during the preceding quarter, and the location of any new SSOs, CSOs, or cross-connections discovered during the quarter, together with a description of what (if anything) was done to eliminate them.

d.      All information required to be submitted under its SPDES Permit in accordance with the requirements of the permit.

e.      A listing of all SSOs or CSOs that occurred in the West Side System during the quarter.  For each SSO or CSO, this report shall contain the following information, where applicable:

i.      the specific location (*i.e.*, street address, intersection, or GPS coordinates);

ii.     the best estimate (or, if monitored, a valid measurement) of the duration, including beginning and end dates and times;

iii.    the best estimate (or, if monitored, a valid measurement) of the volume, including actual flow metering data;

iv.     sampling results from any sampling carried out in satisfying any of the requirements of this Decree;

v.      the water body into which the wastewater was released;

vi.     the specific cause(s);

vii.    any and all measures taken by the City to minimize the duration and/or impacts;

viii.   specific measures taken to eliminate the event;

33

    ix.  the specific measures the City intends to take to prevent recurrence; and

    x.  the date and time a repair crew arrived on-site.

  f.  A list of all SPDES Permit violations that have occurred in the West Side System within the past quarter. This tabular listing shall be submitted in a format (*e.g.*, EXCEL spreadsheet) approved in writing by EPA and DEC, and shall include the date of the violation, the parameter exceeded, the permit limit, the reported amount, and any additional relevant information included on the Discharge Monitoring Report ("DMR") or in its cover letter (*i.e.*, claim of upset, etc.).

  g.  The preventive maintenance activities performed pursuant to this Consent Decree, including Paragraphs 11 (ORI Cleaning), 17 (SSES), 18 (Privately Owned Portion of Lateral), 20(a) (CMOM), and 20(b) (WWTP O&M). This summary shall include information identifying specific pipe segments in the WCTS which were inspected, cleaned, repaired or replaced, number and location of manhole inspections, a summary of all Force Main preventive maintenance activities for the year, and any other non-SSES or non-capacity assurance related activity. Where available, maps shall be submitted documenting the information provided in the report. The summary shall also include information identifying specific components of the WWTP which were inspected, cleaned, repaired or replaced, and any other preventive maintenance activities at the WWTP. With each Quarterly Report the City shall submit certifications, as required pursuant to Paragraph 29 below, that it is complying with the SSS CMOM Program and WWTP O&M Program approved by EPA and DEC.

29.  **Certifications.** All reports required pursuant to this Section shall contain a certification signed by a responsible official of the City. The certification shall read as follows:

I certify that the information contained in or accompanying this (submission / document) is true, accurate and complete. As to (the / those) identified portion(s) of this (submission / document) for which I cannot personally verify (its / their) truth and accuracy, I certify as the official having supervisory responsibility for the person(s) who, acting under my direct instructions, made the verification, that this is true, accurate and complete.

30.     **Retention.**  The City shall maintain copies of all written submissions prepared pursuant to this Section for five years.

## VIII.  **APPROVAL OF DELIVERABLES**

31.     Any plan, report or other item that is required to be submitted to EPA and DEC pursuant to this Decree, including without limitation any data, reports, models, plans, schedules, or other deliverables submitted pursuant to this Decree or any appendix hereto, shall be subject to EPA and DEC review and approval in accordance with this Section.  For each such submission, EPA and DEC shall in writing:

      a.     approve the submission;

      b.     approve the submission upon specified conditions;

      c.     approve part of the submission and disapprove the remainder; or

      d.     disapprove the submission.

32.     If the submission is approved pursuant to Paragraph 31(a), the City shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part, pursuant to Paragraph 31(b) or (c), the City shall, upon written direction of EPA and DEC, take all actions required by the approved plan, report, or other item that EPA and DEC determine are technically severable from any

disapproved portions, subject to the City's right to dispute only the specified conditions or the disapproved portions, under Section XI of this Decree (Dispute Resolution).

33.     If the submission is disapproved in whole or in part pursuant to Paragraph 31(c) or (d), the City shall, within 45 days, or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the resubmission is approved in whole or in part, the City shall proceed in accordance with the preceding Paragraph.

34.     Any Stipulated Penalties applicable to the original submission, as provided in Section IX of this Decree, shall accrue during the 45-day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of the City's obligations under this Decree, the Stipulated Penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

35.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA and DEC may again require the City to correct any deficiencies, in accordance with the preceding Paragraphs, subject to the City's right to invoke dispute resolution pursuant to Section XI and to EPA's and DEC's rights to seek Stipulated Penalties as provided in the preceding Paragraph.

36.     Implementation of any nondeficient portion of a submission shall not relieve the City of any liability for stipulated penalties under Section IX.

37.     Each plan, report and other submission by the City pursuant to this Decree, if and as it is approved by EPA and DEC, shall be incorporated by reference as if set forth fully in this Decree.

36

38.     The City shall implement the plans, studies and other work prescribed in submissions approved by EPA and DEC pursuant to this Decree.

39.     The Oswego City Council shall take all lawful and appropriate actions to facilitate the implementation of this Decree, including prompt review and approval of any bids, contracts, or other documents and, if applicable, prompt review and approval of any schedule of work necessary to maintain compliance with this Decree.

## IX.  STIPULATED PENALTIES

40.     The City shall be liable for stipulated penalties to the Plaintiffs for violations of this Decree as specified below, unless excused under Section X (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

41.     **Late Payment of Civil Penalty.**  If the City fails to pay the civil penalty required to be paid under Section V (Civil Penalty) when due, the City shall also pay a stipulated penalty of $5,000 per Day that the payment is late, together with Interest on the civil penalty accruing from the date on which the Decree is lodged with the Court through the date of payment of the civil penalty.

42.     **SSOs and CSOs**

      a.     SSOs.  The City shall pay a stipulated penalty of:

            i.     $1,250 for each SSO that occurs between November 1, 2013 and November 1, 2017;

ii.      $1,500 for each SSO that occurs between November 1, 2017 and

November 1, 2021; and

iii.     $2,000 for each SSO that occurs after November 1, 2021.

b.      CSOs.   The City shall pay a stipulated penalty of:

i.       $500 for each Prohibited CSO occurring after November 1, 2014 (the

deadline for 25% separation of the CSS, pursuant to Paragraph 25(d));

ii.      $1,000 for each Prohibited CSO occurring after November 1, 2018 (the

deadline for 50% separation of the CSS, pursuant to Paragraph 25(d)); and

iii.     $2,000 for each Prohibited CSO occurring after November 2021 (the

deadline for 75% separation of the CSS, pursuant to Paragraph 25(d)).

43.     **Compliance Milestones**

The following stipulated penalties shall accrue per violation per Day for each violation of

the other requirements identified in Section VI (Compliance Requirements) and Appendix A

(Compliance Schedule):

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $500 | 1st through 14th Day |
| $1,000 | 15th through 30th Day |
| $2,000 | 31st Day and beyond |

44.     **Reporting Requirements**

The following stipulated penalties shall accrue per violation per Day for each violation of

the reporting requirements in Section VII:

38

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 | 1st through 14th Day |
| $500 | 15th through 30th Day |
| $1,000 | 31st Day and beyond |

45.     Either the United States or the State or both may elect to seek stipulated penalties under this Section.  Where both Plaintiffs seek stipulated penalties, any such penalties determined to be owing shall be paid 50 percent to the United States and 50 percent to the State.  Where only one Plaintiff seeks stipulated penalties, the entire amount of the stipulated penalties determined to be owing shall be payable to that party.  In no case shall the determination by one Plaintiff not to seek stipulated penalties preclude the other Plaintiff from seeking stipulated penalties, as otherwise provided for by, and consistent with, the terms of this Consent Decree.

46.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue separately for separate violations of this Decree.

47.     The City shall pay any stipulated penalty within 60 Days of receiving the United States' or the State's written demand.

48.     The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.  The United States or the State may in its unreviewable discretion reduce or waive stipulated penalties otherwise payable to it pursuant to this Decree.

49.     Stipulated penalties shall continue to accrue as provided in Paragraphs 41 through 44 during any dispute resolution proceedings and shall be paid as follows:

a.      If the dispute is resolved by agreement or by a decision of EPA and/or DEC that is not appealed to the Court, the City shall pay accrued penalties determined to be owing, together with Interest thereon, accruing from the date the penalties are determined to have been owed through the date of payment, to the United States and/or the State, as applicable, within 30 Days of the effective date of the agreement or the receipt of EPA's and/or DEC's decision or order, as applicable.

b.      If the dispute is appealed to the Court and the United States and/or the State prevails in whole or in part, the City shall pay all accrued penalties determined by the Court to be owing, together with Interest thereon, accruing from the date the penalties are determined to have been owed through the date of payment, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph (c), below.

c.      If any Party appeals the District Court's decision, the City shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

d.      If the dispute is appealed to the Court and the Court finds that the City is not liable for any accrued penalties then no such penalties shall be due, except as provided in subparagraph (e), below.

e.      If the United States appeals the District Court's decision finding that the City is not liable for any accrued penalties, and if the United States prevails, then the City shall pay all accrued penalties determined to be owing, together with Interest thereon, accruing from the date

40

the penalties are determined to have been owed through the date of payment. The City shall make such payment within 15 Days of receiving the final appellate court decision.

50.     **Obligations Prior to the Effective Date.** Upon the Effective Date of this Decree, the stipulated penalty provisions of this Decree shall be enforceable with regard to any and all violations of the Decree that have occurred after the date of the Decree's lodging, but prior to the Effective Date, provided that such stipulated penalties may not be collected unless and until this Decree is entered by the Court.

51.     The City shall pay stipulated penalties owing to the United States or the State in the manner set forth and with the confirmation notices required by Section V (Civil Penalty), except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

52.     If the City fails to pay stipulated penalties according to the terms of this Decree, the City shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or the State from seeking any remedy otherwise provided by law for the City's failure to pay any stipulated penalties.

53.     Subject to the provisions of Section XIII (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for the City's violation of this Decree or applicable law. Where a violation of this Decree is also a violation of the Act, the City shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

41

## X. **FORCE MAJEURE**

54.    "*Force majeure*," for purposes of this Decree, is defined as any event arising from causes beyond the control of the City, of any entity controlled by the City, or of the City's contractors, that delays or prevents the performance of any obligation under this Decree despite the City's best efforts to fulfill the obligation.  The requirement that the City exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential *force majeure* event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible.  "*Force Majeure*" does not include the City's financial inability to perform any obligation under this Decree.

55.    If any event occurs or has occurred that may delay the performance of any obligation under this Decree, whether or not caused by a *force majeure* event, the City shall provide notice orally and by electronic or facsimile transmission to EPA and DEC, in accordance with Section XV (Notices) within two business days of when the City first knew that the event might cause a delay.  Within seven calendar days thereafter, the City shall provide in writing to EPA and DEC an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the City's rationale for attributing such delay to a *force majeure* event if it intends to assert such a claim; and a statement as to whether, in the opinion of the City, such event may cause or contribute to an endangerment to public health, welfare or the environment.  The City shall include with any notice, all available documentation supporting the claim that the delay was

42

attributable to a *force majeure*. Failure to comply with the above requirements shall preclude the City from asserting any claim of *force majeure* for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. The City shall be deemed to know of any circumstance of which the City, any entity controlled by the City, or the City's contractors or subcontractors knew or should have known.

56.     If EPA and DEC agree that the delay or anticipated delay is attributable to a *force majeure* event, the time for performance of the obligations under this Decree that are affected by the *force majeure* event will be extended by EPA and DEC for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the *force majeure* event shall not, of itself, extend the time for performance of any other obligation. EPA and/or DEC will notify the City in writing of the length of the extension, if any, for performance of the obligations affected by the *force majeure* event.

57.     If EPA and DEC do not agree that the delay or anticipated delay has been or will be caused by a *force majeure* event, EPA and/or DEC will notify the City in writing of their decision.

58.     If the City elects to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's and/or DEC's notice. In any such proceeding, the City shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a *force majeure* event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that the City has otherwise complied with this Section. If the City

43

carries this burden, the delay at issue shall be deemed not to be a violation by the City of the affected obligation of this Decree identified to EPA and DEC and the Court.

## XI. **DISPUTE RESOLUTION**

59.     Unless otherwise expressly provided for in this Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Decree.  The City's failure to seek resolution of a dispute under this Section shall preclude the City from raising any such issue as a defense to an action by the United States or the State to enforce any obligation of the City arising under this Decree.

60.     **Informal Dispute Resolution.**  Any dispute subject to Dispute Resolution under this Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when the City sends both Plaintiffs a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the Plaintiff(s) shall be considered binding unless, within 45 Days after the conclusion of the informal negotiation period, the City invokes formal dispute resolution procedures as set forth below.

61.     **Formal Dispute Resolution.**  The City shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on both Plaintiffs a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting the City's position and any supporting documentation relied upon by the City.

44

62.     The Plaintiff(s) shall serve a Statement of Position within 45 Days of receipt of the City's

Statement of Position.  Such Statement of Position shall include, but need not be limited to, any

factual data, analysis, or opinion supporting that position and any supporting documentation

relied upon by the Plaintiff(s).  Such Statement of Position shall be binding on the City, unless

the City files a motion for judicial review of the dispute in accordance with the following

Paragraph.

63.     The City may seek judicial review of the dispute by filing with the Court and serving on

both Plaintiffs, in accordance with Section XV (Notices), a motion requesting judicial resolution

of the dispute.  The motion must be filed within 20 Days of receipt of the Statement of Position

pursuant to the preceding Paragraph.  The motion shall contain a written statement of the City's

position on the matter in dispute, including any supporting factual data, analysis, opinion, or

documentation, and shall set forth the relief requested and any schedule within which the dispute

must be resolved for orderly implementation of the Decree.

64.     The Plaintiff(s) shall respond to the City's motion within the time period allowed by the

Local Rules of this Court.  The City may file a reply memorandum, to the extent permitted by the

Local Rules.

65.     **Standard of Review**

        a.      **Disputes Concerning Matters Accorded Record Review.**  Except as otherwise

provided in this Decree, in any dispute brought under Paragraphs 61-64 (Formal Dispute

Resolution) pertaining to the adequacy or appropriateness of plans, procedures to implement

plans, schedules or any other items requiring approval by the United States (including EPA) or

the State (including DEC) under this Decree, the adequacy of the performance of work

45

undertaken pursuant to this Decree, and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, the City shall have the burden of demonstrating, based on the administrative record, that the position of the United States or the State, as applicable, is arbitrary and capricious or otherwise not in accordance with law.

b. **Other Disputes.**  Except as otherwise provided in this Decree, in any other dispute brought under Paragraphs 61-64 (Formal Dispute Resolution), the City shall bear the burden of demonstrating that its position complies with this Decree and better furthers the objectives of the Decree.

66.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of the City under this Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Section IX (Stipulated Penalties).  If the City does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties).

## XII. INFORMATION COLLECTION AND RETENTION

67.    The United States, the State and its their representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Decree, at all reasonable times, upon presentation of credentials, to:

a.    monitor the progress of activities required under this Decree;

46

b.      verify any data or information submitted to the United States or the State in accordance with the terms of this Decree;

c.      obtain samples and, upon request, splits of any samples taken by the City or its representatives, contractors, or consultants;

d.      obtain documentary evidence, including photographs and similar data; and

e.      assess the City's compliance with this Decree.

68.    Upon request, the City shall provide EPA and DEC or their authorized representatives splits of any samples taken by the City.  Upon request, EPA shall provide the City splits of any samples it has taken, and DEC shall provide the City splits of any samples it has taken.

69.    Until five years after termination of this Decree, the City shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to the City's performance of its obligations under this Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States or the State, the City shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

70.    At the conclusion of the information-retention period provided in the preceding Paragraph, the City shall notify the United States and the State at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the State, the City shall deliver

47

any such documents, records, or other information to EPA or and DEC.  The City may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If the City asserts such a privilege, it shall provide the following:

    a.    the title of the document, record, or information;

    b.    the date of the document, record, or information;

    c.    the name and title of each author of the document, record, or information;

    d.    the name and title of each addressee and recipient;

    e.    a description of the subject of the document, record, or information; and

    f.    the privilege asserted by the City.

However, no documents, records, or other information created or generated pursuant to the requirements of this Decree shall be withheld on grounds of privilege.

71.    The City may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that the City seeks to protect as CBI, the City shall follow the procedures set forth in 40 C.F.R. Part 2.

72.    This Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of the City to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIII. **EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS**

73.     This Decree resolves the civil claims of the United States and the State for the violations alleged in their Complaint through the date of lodging, including without limitation alleged violations of requirements to develop and implement a Long-Term Control Plan.

74.     The United States and the State each reserves all legal and equitable remedies available to enforce the provisions of this Decree, except as expressly stated in Paragraph 73.  This Decree shall not be construed to limit the rights of the United States or the State to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 73.

75.     In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, civil penalties, other appropriate relief relating to the West Side System, the City shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 73.

76.     This Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  The City is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and the City's compliance with this Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States and the State do not, by their consent to entry of this Decree, warrant or aver in any manner that the City's

49

compliance with any aspect of this Decree will result in compliance with provisions of the Act,

33 U.S.C. §§ 1251-1387, or with any other provisions of federal, State, or local laws, regulations,

or permits.

77.     This Decree does not limit or affect the rights of the City or of the United States or the

State against any third parties, not party to this Decree, nor does it limit the rights of third parties,

not party to this Decree, against the City, except as otherwise provided by law.

78.     This Decree shall not be construed to create rights in, or grant any cause of action to, any

third party not party to this Decree.

## XIV.  COSTS

79.     The Parties shall bear their own costs of this action, including attorneys' fees, except that

the United States and the State shall be entitled to collect the costs (including without limitation

the costs of attorney time) incurred in any action necessary to collect any portion of the civil

penalty or any stipulated penalties due but not paid by the City.

## XV.  NOTICES

80.     Unless otherwise specified herein, whenever notifications, submissions, or

communications are required by this Decree, they shall be made in writing and addressed as

follows:

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Re:  DOJ No. 90-5-1-1-08609

and

Chief, Water Compliance Branch
Division of Enforcement and Compliance Assistance
Department of Enforcement and Compliance Assistance
United States Environmental Protection Agency
Region 2
290 Broadway - 20th Floor
New York, NY 10007

To EPA:

Chief, Water and General Law Branch
Office of Regional Counsel
United States Environmental Protection Agency
Region 2
290 Broadway - 16th Floor
New York, NY 10007

To the State or DEC:

Chief, Water Bureau
Office of General Counsel
New York State Department of Environmental Conservation
625 Broadway, 14th Floor
Albany, NY 12233-1500

and

Regional Water Engineer
New York State Department of Environmental Conservation
Division of Water
615 Erie Blvd., West
Syracuse, NY  13204-2400

and

Bureau of Water Permits
Division of Water
New York State Department of Environmental Conservation
625 Broadway, 4th Floor
Albany, NY  12233-3505

51

<u>To the City(s)</u>:

City of Oswego
City Hall
13 West Oneida Street
Oswego, NY 13126
ATTN:  Mayor & City Attorney

and

Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, NY 13202
ATTN:  Robert R. Tyson

81.     Any Party may, by written notice to the other Parties, change its designated notice

recipient or notice address provided above.

82.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing,

unless otherwise provided in this Decree or by mutual agreement of the Parties in writing.

## XVI.  <u>EFFECTIVE DATE</u>

83.     The Effective Date of this Decree shall be the date upon which this Decree is entered by

the Court or a motion to enter the Decree is granted, whichever occurs first, as recorded on the

Court's docket; provided, however, that the City hereby agrees that it shall be bound to

implement any requirements of this Decree with deadlines scheduled for dates prior to the

Effective Date.  In the event the United States withdraws or withholds consent to this Decree

before entry, or the Court declines to enter the Decree, then all requirements of this Decree,

including those referenced in this Paragraph above, will be deemed to have terminated.

## XVII.  **RETENTION OF JURISDICTION**

84.    The Court shall retain jurisdiction over this case until termination of this Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XI and XVIII, or effectuating or enforcing compliance with the terms of this Decree.

## XVIII.  **MODIFICATION**

85.    Unless otherwise provided herein, the terms of this Decree, including its appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

86.    Any disputes concerning modification of this Decree shall be resolved pursuant to Section XI (Dispute Resolution); provided, however, that instead of the burden of proof provided by Paragraph 65, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Fed. R. Civ. P. 60(b).

## XIX.  **PUBLIC PARTICIPATION**

87.    This Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Decree disclose facts or considerations indicating that the Decree is inappropriate, improper, or inadequate.  The City consents to entry of this Decree without further notice and agrees not to withdraw from or oppose entry of this Decree by the Court or to challenge any provision of the Decree, unless the United States has notified the City in writing that it no longer supports entry of the Decree.

## XX. **SIGNATORIES/SERVICE**

88.    Each undersigned representative of the City, the State, and the Assistant Attorney General for the Environment and Natural Resources Division of the U.S. Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Decree and to execute and legally bind the Party he or she represents to this document.

89.    This Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  The City agrees to accept service of process by mail with respect to all matters arising under or relating to this Decree and to waive the formal service requirements set forth in Fed. R. Civ. P. 4 and 5 and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI. **INTEGRATION**

90.    This Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than deliverables that are subsequently submitted and approved pursuant to this Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

54

## XXII.  TERMINATION

91.     After the City has completed the corrective measures required under Section VI

(Compliance Requirements) and Appendix A, has thereafter maintained satisfactory compliance

with this Decree and the SPDES Permit for a period of 12 consecutive months as determined by

EPA and DEC, has paid the civil penalty and all accrued stipulated penalties and Interest thereon

as required by this Decree, and has complied with all other requirements of this Decree, the City

may serve upon the United States and the State a Request for Termination, stating that the City

has satisfied those requirements, together with all supporting documentation.

92.     Following receipt by the United States and the State of the City's Request for

Termination, the Parties shall confer informally concerning the Request and any disagreement

that the Parties may have as to whether the City has satisfactorily complied with the

requirements for termination of this Decree.  If the United States and the State agree that the

Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation

terminating the Decree.

93.     If the United States or the State do not agree that the Decree may be terminated, the City

may invoke Dispute Resolution under Section XI.  However, the City shall not seek Dispute

Resolution of any dispute regarding termination under this Section until 60 days after service of

its Request for Termination.

## XXIII.  FINAL JUDGMENT

94.     Upon approval and entry of this Decree by the Court, this Decree shall constitute a final

judgment of the Court as to the United States, the State, and the City.  The Court finds that there

is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R.

Civ. P. 54 and 58.

## XXIV. <u>APPENDICES</u>

95.     The following appendices are attached to and part of this Decree:

"Appendix A" contains a chart depicting Oswego West Side Sewer System

Milestones and Schedule;

"Appendix B" contains a map depicting catch basin locations;

"Appendix C" contains a form of warning sign; and

"Appendix D" contains a second form of warning sign.

SO ORDERED THIS <u>5th</u>   DAY OF <u>August</u>   , 2010.

<u>Neal P. McCurn</u>
Neal P. McCurn
Senior United States District Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States and State of New York v. City of Oswego (N.D.N.Y.):

FOR THE UNITED STATES OF AMERICA

Date: _4/28/10_

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice
Washington, D.C.  20530

Date: _5/3/10_

DAVID L. WEIGERT
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
(202) 514-0133

RICHARD S. HARTUNIAN
United States Attorney
Northern District of New York

58

WILLIAM H. PEASE
Assistant United States Attorney
Chief, Civil Division
U.S. Attorney's Office
Northern District of New York
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261-7198
Phone:  (315) 448-0672
Fax:  (315) 448-0689

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States and State of New York v. City of Oswego (N.D.N.Y.):

Date: _____3 | 29 | 10_____

JUDITH A. ENCK
Regional Administrator
U.S. Environmental Protection Agency, Region 2
290 Broadway
New York, NY 10007-1866

Date: _____3 | 18 | 10_____

ERIC SCHAAF
Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway, 17th Floor
New York, NY 10007-1866

OF COUNSEL:

KIM KRAMER
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway, 16th Floor
New York, NY 10007-1866

60

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States and State of New York v. City of Oswego (N.D.N.Y.):

Date: _April 19, 2010_

MARK POLLINS
Division Director
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

Date: _April 9, 2010_

ALAN MORRISSEY
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

61

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States and State of New York v. City of Oswego (N.D.N.Y.):

FOR THE STATE OF NEW YORK

ANDREW M. CUOMO
Attorney General
State of New York

Date: 3/30/10

ROBERT ROSENTHAL
Assistant Attorney General
State of New York

62

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned United States and State of New York v. City of Oswego (N.D.N.Y.):

FOR THE STATE OF NEW YORK

PETE GRANNIS
Commissioner
New York State Department of Environmental
  Conservation

Date: 3/29/2010

JAMES M. TIERNEY
Assistant Commissioner
Division of Water Resources
New York State Department of Environmental
  Conservation
625 Broadway
Albany, NY 12233-1010
(518) 402-8545

63

THE UNDERSIGNED PARTY enters into this Consent Decree in this action captioned
United States and State of New York v. City of Oswego (N.D.N.Y.):

FOR THE CITY OF OSWEGO

Date: 8/9/10

RANDOLPH F. BATEMAN
Mayor
Second Floor, City Hall
13 W. Oneida Street
Oswego, NY 13126

**Appendix A**

**Oswego West Side Sewer System Milestones and Schedule**

## Appendix A

## MILESTONE SCHEDULE[1]

| Date(s) | Milestone | Para. No. |
|---|---|---|
| *See* 6 NYCRR Pt. 750 | Deadline for oral and written notification of any SSO or CSO | 27.a |
| *See* 6 NYCRR Pt. 750 | Deadline for submission of written report on each SSO or CSO | 27.b |
| Date of Discovery of Excessive I/I + 90 days | Deadline for notifying owners and taking action consistent with legal authority to eliminate Excessive I/I in privately owned portions of laterals | 18 |
| CD Signature, through 11/1/10 | Flow monitoring required using existing monitoring devices | 14.a |
| 3/1/10 | Deadline for retention of municipal finance expert to assist in securing funding for CD compliance | 16.b |
| 3/1/10 | Deadline for submission of SSES Report | 17.b |
| 3/1/10 | Deadline for submission of: <br> (1) current Wet Weather Operating Plan; <br> (2) current WWTP O&M plan; and <br> (3) identification of Sensitive Areas under SPDES Permit | 20.b.iii |
| CD Effective Date + 30 days | Deadline for payment of civil penalty | 9 |
| 3/31/10 | Deadline for posting SSO and CSO warning signs | 15.b |
| 4/1/10 | Deadline for ceasing construction of new extensions, unless specified conditions are met | 19 |
| 5/1/10 | Deadline for submission of Disinfection Report | 12.a |
| 5/1/10 | Deadline for submission of WWTP Expansion Report | 22.a |
| 5/28/10, 7/28/10, and quarterly thereafter | Deadline for submission of Quarterly Report | 28 |
| 7/1/10, and annually thereafter | Deadline for inspection of ORI | 11 |

---

[1] This Milestone Schedule is included as a reference tool only, to facilitate compliance with the requirements set forth in the body of the Consent Decree. Nothing in this Milestone Schedule is intended or shall be construed to alter or affect in any way the meaning of the Consent Decree provisions to which it refers.

| 11/1/10 | Deadline for elimination of inflow from catch basins | 13 |
|---|---|---|
| 11/1/10 | Deadline for submission of CMOM Program | 20.a |
| 11/1/10 | Deadline for making best efforts to enter into legally enforceable arrangement with SUNY to minimize Excessive I/I | 20.a.iii. |
| 12/31/10 | Deadline for installation and commencement of operation of new flow monitoring devices | 14.b |
| 2/1/11 | Deadline for submission of Water Quality Baseline Memo | 26.a |
| 6/1/11 | Deadline for commencement of Seasonal Disinfection, pursuant to Disinfection Report | 12.a |
| 7/1/11 | Deadline for submission of WWTP expansion plans and specifications | 22.b |
| 1/1/12 | Deadline for submission of Pump Station evaluation ("PSE") | 21.a |
| 1/1/12 | Deadline for submission of CSO Control Report's First 25% Plan | 25.d.i |
| 3/1/12 | Deadline for establishment of Enterprise Fund for sewer use fees | 16.c |
| 11/1/12 | Deadline for submission of Post-Construction Monitoring Program, including Post-Construction Monitoring Plan | 26.b |
| 1/1/13 | Deadline for submission of Pump Station Report | 21.b |
| 1/1/13 | Deadline for submission of EFMF Optimization Report | 23.a |
| 3/1/13, and annually thereafter | Deadline for adjustment of sewer use fees, to ensure Enterprise Fund covers anticipated expenses | 16.c |
| 11/1/13 | Deadline for submission of WWTP O&M Program | 20.b |
| 11/1/13 | Deadline for completion of WWTP expansion, pursuant to WWTP Expansion Report | 22.b |
| 11/1/14 | Deadline for completion of corrective actions, pursuant to SSES Report | 17.b |
| 11/1/14 | Deadline for completion of Pump Station upgrade, pursuant to Pump Station Report | 21.c |
| 11/1/14 | Deadline for completion of EFMF optimization, pursuant to EFMF Optimization Report | 23.a |
| 11/1/14 | Deadline for submission of Remaining WCTS Plan, Pt. 1 | 20.a.i |
| 11/1/14 | Deadline for separation of 25% of CSS, pursuant to First 25% Plan | 25.d.ii |

| 1/1/16 | Deadline for submission of CSO Control Report's Second 25% Plan | 25.d.iii |
|---|---|---|
| 11/1/18 | Deadline for separation of 50% of CSS, pursuant to Second 25% Plan | 25.d.iv |
| 11/1/18 | Deadline for submission of Remaining WCTS Plan, Pt. 2 | 20.a.ii |
| 1/1/19 | Deadline for submission of CSO Control Report's Third 25% Plan | 25.d.v |
| 11/1/21 | Deadline for separation of 75% of CSS, pursuant to Third 25% Plan | 25.d.vi |
| 11/1/21, or completion of 75% separation + 60 days, whichever is earlier | Deadline for commencement of post-construction monitoring | 26.b |
| 1/1/23 | Deadline for submission of Post-Construction Monitoring Report | 26.c |

**Appendix B**

**<u>Map Depicting Catch Basin Locations</u>**





-N-

## PROJECT LOCATIONS MAP
N.T.S.

**Appendix C**

**Form of Warning Sign**

# WARNING
## LOCATION OF SEWER SYSTEM OVERFLOW
## AVOID CONTACT WITH WATER

  

## NO FISHING    •    NO DOCKING
## NO SWIMMING
### Exposure to Water May Cause Illness

Report Foul Odors or Unusual Discoloration
Call 315-343-1212                    Reference Sign #:

City of Oswego
West Oneida Street
Oswego NY 13126

1628312.2

**Appendix D**

**Second Form of Warning Sign**

# WARNING

## LOCATION OF SEWER SYSTEM OVERFLOW
## AVOID CONTACT WITH WATER

   

# NO FISHING   •   NO WADING
# NO SWIMMING   •   NO PLAYING

## Exposure to Water May Cause Illness

Report Foul Odors or Unusual Discoloration
Call 315-343-1212                    Reference Sign #:

City of Oswego
West Oneida Street
Oswego NY 13126